# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

GEORGE LUJAN and JOHN GURULE,

    Plaintiffs and Counterdefendant (Lujan),

vs.                                            CIV. No. 98-1191 BB/LFG

EARTHGRAINS BAKING COMPANIES, INC.,

    Defendant/Counterclaimant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of three motions filed by Defendant (Docs. 57, 61, and 67). These motions are a motion for partial summary adjudication concerning Plaintiffs' breach of contract claims, a motion for summary judgment concerning the open-account claims, and a motion to strike certain affidavits filed by Plaintiffs. The Court has reviewed the parties' submissions and the relevant law. For the reasons set forth below, the Court will grant in part and deny in part the motion for partial summary adjudication, deny the motion for summary judgment, and grant the motion to strike the affidavits.

**Motion to Strike**

Plaintiffs stipulated that their wives would not be witnesses at trial, and did not identify them during discovery as persons having knowledge of the transactions at issue in this case. After Defendant filed its motions for partial summary adjudication and for summary judgment, Plaintiffs filed affidavits submitted by their wives. These affidavits contain detailed information concerning the pattern of conduct between Plaintiffs and Defendant. Plaintiffs, however, must be held to their agreement that their wives would not be involved in this case as witnesses. Therefore, the

motion to strike these affidavits will be granted, and the Court has not considered the contents of the affidavits in addressing Defendant's motions. *See, e.g., Geiserman v. MacDonald*, 893 F.2d 787, 792-93 (5th Cir. 1990) (where expert's testimony would not be admissible at trial, that expert's affidavit could not be used to oppose motion for summary judgment).

**Motion for Summary Judgment**

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendant's motion in light of these standards.

Plaintiffs' open-account claims against Defendant are based on allegations that Defendant committed errors in accounting and in crediting Plaintiffs for delivery shortages, damaged bread products, and price adjustments. Many of these alleged errors occurred in 1996, during a period when Defendant was allegedly having computer problems. Defendant contends these allegations

2

of mistake and error cannot be submitted to a jury, because Plaintiffs in effect waived their claims due to their subsequent actions. Defendant's position is based on the legal theory that both Plaintiffs created an "account stated" situation, by failing to object within a reasonable time to the final bills submitted to them by Defendant.

As Defendant points out, an account stated, once established, operates as an admission by each party that a certain sum of money is due. *See Hinkle, Cox, et al. v. Cadle Co.*, 115 N.M. 152, 157, 848 P.2d 1079, 1084 (1993). However, an account stated is not conclusive; it may be contradicted by evidence showing the amount of the account stated was erroneous, due to mistakes underlying the calculation of the amount. This is especially true where the account stated is not a negotiated settlement of disputed items, but merely a mathematical calculation consisting of addition and subtraction. *See* Arthur Corbin, *Corbin on Contracts* § 1315, pp. 284-88 (1962). In this case (viewing the evidence in the light most favorable to Plaintiffs) there was no compromise of a disputed amount. Instead, Plaintiffs continually objected to the periodic bills submitted by Defendant. Defendant's representative, Dennis Smith, told them to go ahead and pay the claimed amounts and the problems would be rectified later.[1] Defendant did not agree to accept less money from Plaintiffs than Defendant had been claiming; Plaintiffs simply paid the claimed amount. Therefore, they are entitled to attack the underlying transactions leading up to the final amount claimed by Defendant.

---

[1]These facts distinguish this case from *Hinkle*. In *Hinkle*, there was one meeting at which the defendant apparently complained generally that the law firm's bills were too high. Following that meeting, however, the defendant paid every bill submitted by the firm without protest. In this case, there is evidence of repeated complaints by Plaintiffs and assurances by Defendant's representative that the errors would be corrected. Furthermore, as discussed below, in this case there was ample evidence that the amount claimed by Defendant in its final bill was erroneous. In *Hinkle*, on the other hand, there was no such evidence.

The Court notes, furthermore, that in this case there is independent evidence of mistake in the calculation of the amounts due under the open account. Another distributor, Wayne Conway, had significant difficulty with Defendant's accounting during the 1996 period of time that is mainly at issue in this case. He testified in his deposition that the bills submitted by Defendant were too high, that Defendant was having problems with its computer system, and that his concerns were only resolved when Defendant agreed to accept his figures instead of their own as the amount Conway owed. As Professor Corbin discusses, even in an account stated situation the amount claimed by one party is subject to attack on the basis that the amount assented to was not accurate. *See id.*, pp. 282-84.[2]

The Court finds, therefore, that there is a genuine issue of fact as to the amounts owed by Plaintiffs on their open accounts at the time they terminated their distributorships. There is evidence that Plaintiffs complained in 1996 about the bills being submitted by Defendant; that Defendant's representative assured them the problem would be taken care of, and told them to pay the bills in full despite their concerns; that other distributors had problems with Defendant's accounting at the same time; that Plaintiffs had difficulty with one particular employee of Defendant, who refused to give them proper credit for shortages and damaged products; and that Plaintiffs notified Dennis Smith or other Earthgrains employees of these problems. Given this evidence, Plaintiff Gurule's payment of the entire amount of his final bill, without protest, is not conclusive evidence that the amount was correct. It goes without saying that Plaintiff Lujan's

---

[2]The Court notes Professor Corbin's suggestion that a party may be bound to its account stated by principles of estoppel, if the opposing party has relied on the first party's agreement that a certain amount is owed. However, there is an issue of fact as to whether such estoppel should be applied in this case.

retention of the final bill, coupled with his refusal to pay a portion of it, can in no way be considered conclusive evidence of assent to the amount claimed by Defendant.

Defendant's motion for summary judgment on the open-account claims will be denied.

**Motion for Partial Summary Adjudication**

As Defendant has pointed out, the same standards applicable to a motion for summary judgment apply when the Court is considering a motion for partial summary adjudication. In addition, however, this Court has discretion to deny such a motion if granting the motion will not materially expedite the litigation. *See* 10B Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2737 (1998).

In addressing Defendant's motion, it is important to keep in mind Plaintiff's essential breach-of-contract claims. Each Plaintiff claims generally that Defendant failed to act in good faith in deciding whether to approve of potential purchasers of each Plaintiff's distributorship. Each Plaintiff also claims that Defendant did so in order to pressure each Plaintiff to surrender his distributorship without receiving any compensation for it. Each Plaintiff also claims he was pressured into making payments on his open account, even though that Plaintiff never exceeded the allowed credit level of four weeks worth of gross sales revenues. Furthermore, both Plaintiffs have raised a specific claim of breach of contract separate from the general claim: Lujan maintains he was promised that his successor would be required to purchase his warehouse, just as he was required to purchase the warehouse from his predecessor when he took over the distributorship. Gurule claims he was not given assistance in running his distributorship when he needed such assistance due to a medical emergency, even though Defendant was contractually obligated to provide such assistance.

5

It is important to resolve one preliminary point with respect to the general breach-of-contract claims. Defendant maintains it had complete discretion to approve or disapprove of potential purchasers of Plaintiffs' distributorships. Defendant also contends this discretion was not limited by any requirement of reasonableness. The Court disagrees. Under New Mexico law, every contract imposes upon the parties a duty of good faith and fair dealing in its performance. *See Cypress Gardens, Ltd. v. Platt*, 124 N.M. 472, 478, 952 P.2d 467, 473 (Ct. App. 1997). In particular, a standard of commercial reasonableness applies in commercial transactions analogous to this one, requiring the consent of a landlord before a tenant can sublet commercial premises. *See Boss Barbara, Inc. v. Newbill*, 97 N.M. 239, 241, 638 P.2d 1084, 1086 (1982).

In support of its motion for partial summary adjudication, Defendant separates the allegations of the complaint and argues that each one, individually, cannot constitute a breach of contract. For example, Defendant contends there were good reasons to reject Anthony Nodine as a buyer of Gurule's business, Rick Smith as a buyer of part of Gurule's business, and Zeke Acosta as a buyer of Lujan's business. Defendant also argues it had no obligation to offer Gurule the Los Lunas area, and claims it was not a breach of contract to ask Plaintiffs to sign written distributorship agreements to replace the oral agreements under which they had been operating. The Court believes Defendant's arguments are too narrowly focused. Plaintiffs have alleged a pattern and practice of activity on Defendant's part, designed to prevent Plaintiffs from being able to sell their distributorships to ready, willing, and able buyers. Plaintiffs have also alleged that Defendant desired to force Plaintiffs to give up their distributorships, and took various actions as part of that plan. What matters, therefore, is not whether each of Plaintiffs' allegations constitutes a separate breach of contract. Rather, the question is whether these allegations constitute part of

a pattern of activity that was directed toward Plaintiffs, was not in good faith, and caused harm to Plaintiffs.

Viewed in this manner, each of the claims that Defendant wishes to strike from the lawsuit is relevant to the general breach of contract claims raised by Plaintiffs, and partial summary adjudication is not appropriate at this time with respect to any of the claims. In other words, if Plaintiff can establish that all of the allegations, taken as a whole, constituted a breach of contract, it does not matter whether each individual incident standing alone would also be considered a breach of the contract. For example, Defendant's refusal to allow Rick Smith to purchase only one of Gurule's routes, standing alone, may be a commercially reasonable decision. However, if Defendant's intent was actually to prevent the sale of Gurule's distributorship, the Smith transaction becomes relevant as part of the proof of Defendant's intent. As another example, while the request that Plaintiffs sign written distributorship contracts, standing alone, is certainly not actionable, Plaintiffs may be able to prove it was part of a plan to terminate their distributorships, since the written contracts may have been more restrictive than the open-ended oral agreements under which Plaintiffs had been operating. Finally, the fact that Defendant hired several individuals who were prospective purchasers of distributorships is not a breach of contract in itself, but may, depending on the level of their employment, be evidence that Defendant's rejection of them as purchasers might not have been commercially reasonable. In sum, much of the evidence attacked by Defendant's motion appears relevant to the general breach-of-contract claims, even though when cut into bits and pieces the individual segments may not be actionable.

There is ample evidence in the record through the testimony of witnesses such as Brad Olsen that Defendant's agents did intend to force Plaintiffs out of their distributorships, for

7

whatever reason, and did want Plaintiffs' distributorships to go to particular individuals rather than the buyers proffered by Plaintiffs. Based on this testimony, and on the pattern-of-activity discussion set out above, partial summary adjudication will be denied as to all of Defendant's contentions concerning the general breach of contract claims.

The question is different, however, when the specific, individual breach-of-contract claims are considered. These claims are not part of the same general pattern of activity discussed above, but are specific instances of alleged failure by Defendant to comply with a contractual requirement.

Gurule maintains that his oral agreement included a provision requiring Defendant to provide emergency assistance to keep the distributorship operating, should such assistance be necessary. Defendant does not deny that such a provision was part of the agreement. Instead, Defendant points out that Gurule did not ask for help when his medical condition caused him to be hospitalized and to restrict his activities. Gurule specifically testified to that effect in his deposition, saying he might have been "too proud" to request the assistance. Gurule did testify that Dennis Smith, Defendant's representative, knew Gurule was ill. However, in the absence of a specific request for help, Defendant cannot be held to have breached the contractual provision. To the extent Gurule might argue the contractual provision should kick in any time Defendant was aware of a medical emergency, the Court disagrees. Defendant had no way of knowing whether Gurule had other assistance to do his work while he was out of commission. In addition, a contract that requires one party to provide assistance, without specifying the conditions under which such assistance will become mandatory, or whether a request for such assistance is a prerequisite to the other party's performance, is so vague as to be unenforceable. The alleged

8

agreement provides no standards to apply in determining whether a breach has occurred, or in determining the duties or responsibilities of either party. There is no indication of the point at which Gurule's need for assistance would become great enough to require Defendant to step in and offer to help. *See generally* Vol. 1 Joseph M. Perillo, *Corbin on Contracts*, § 4.1 (1993) (discussing vagueness of contractual terms, and court's lack of ability to enforce a contract unless the court can determine what the contract is). For these reasons, Defendant's request for partial summary adjudication eliminating this claim from the lawsuit will be granted.

Lujan's specific contractual claim is that when Defendant approved a successor for his distributorship, that successor would be required to purchase his warehouse as a condition of obtaining the distributorship. Defendant attacks this alleged provision on several grounds. First, Defendant maintains it is an agreement for the sale of real property, which must be in writing to be enforceable. The Court disagrees. The contractual provision was not an agreement to buy or sell the warehouse, but an agreement that Defendant would not approve a successor distributor for Lujan's area unless the successor agreed to purchase Lujan's warehouse.

Defendant also maintains the alleged agreement is unenforceable because it is too vague and indefinite. Defendant points out that no price was set for the purchase of the warehouse, that it is not clear whether Lujan would be required to sell the warehouse to the successor or could refuse to make the sale, and that other ambiguities exist. Indeed the only definite provision of the putative contract, as described by Lujan and another witness, James Ravenscraft, is the following: if Lujan purchased the warehouse from his predecessor, thus allowing the predecessor to pay off the amount he owed to Defendant, Lujan's successor would be required to purchase the warehouse from Lujan. This putative contract therefore lacks a price term or any reference to a

9

means for determining an appropriate price, which is another form of vagueness that makes a contract unenforceable. *See Corbin*, § 4.3, pp. 568-69 (where parties have not specified a price, have not expressly or impliedly agreed upon a reasonable price, and have not prescribed any method of determining an appropriate price, the agreement is too indefinite for enforcement). As Defendant argues, the alleged agreement also lacks other details, such as the duration of the agreement and the extent to which Lujan would be bound to sell the warehouse if he did not want to do so. Under the circumstances of this case, it is too difficult to fill in the missing details of the agreement in a manner that would comport with the parties' intent. For example, if there is no willing buyer who would set the value and would it be subject to protest or arbitration? There is simply no indication of the price term that the parties intended to include in the agreement. Therefore, the Court finds the alleged agreement is too vague and indefinite to be enforced, and partial summary judgment will be granted dismissing this claim from the case.

**Conclusion**

Based on the foregoing, the Court will deny Defendant's motion for summary judgment, deny in part and grant in part Defendant's motion for partial summary adjudication, and grant Defendant's motion to strike the affidavits filed by Plaintiffs' wives.

# ORDER

Defendant's motion for summary judgment (Doc. 61) is hereby DENIED; Defendant's motion for partial summary adjudication (Doc. 57) is hereby GRANTED in part and DENIED in part; and Defendant's motion to strike certain affidavits (Doc. 67) is hereby GRANTED.

DATED October 5, 1999.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

**Attorneys:**

**For Plaintiffs**
Patrick R. Brito
1850 Old Santa Fe Trail
Santa Fe, New Mexico 87505

**For Defendant**
Henry M. Bohnhoff
Mary Keleher Castle
Rodey, Dickason, Sloan, Akin & Robb, P.A.
P.O. Box 1888
Albuquerque, New Mexico 87103